IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:13-CV-850-FL

| | |
|---|---|
| KENDA R. KIRBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NORTH CAROLINA STATE ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

This case, brought by *pro se* plaintiff Kenda Kirby ("plaintiff"), comes before the court on the motion (D.E. 15) by defendant North Carolina State University ("NCSU") to dismiss the case for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6), respectively. Plaintiff has responded (*see* D.E. 18) and the motion is ripe for adjudication. The motion was referred to the undersigned Magistrate Judge for issuance of a memorandum and recommendation. (*See* 3rd D.E. after D.E. 18). For the reasons set forth below, it will be recommended that NCSU's motion be allowed and this case be dismissed.

**I.   BACKGROUND**

Plaintiff filed her complaint on 13 January 2014. (*See* Compl. (D.E. 3)). Taking its allegations in the light most favorable to plaintiff,[1] the complaint alleges as follows:

In 1992, plaintiff was admitted to a Ph.D. program at the College of Veterinary Medicine ("CVM") at NCSU. (*Id.* ¶ 8). In April 1993, she attended a lesbian and gay event in Washington, D.C. (*Id.* ¶ 3). She took final exams the following week, doing well enough to

---

[1] This summary reflects the principles set out in the Discussion section below that the allegations of the complaint must be viewed favorably toward plaintiff.

maintain her good standing at NCSU. (*Id.* ¶ 9). CVM subsequently changed her grades because of her support for President Clinton and attendance at the rally. (*Id.* ¶ 11). In January 1994, CVM terminated plaintiff from the Ph.D. program on the stated grounds of low grades, among others. (*Id.* ¶ 16). Plaintiff filed a grievance, pursuant to NCSU's internal procedures, and attended a class in the spring 1994 semester ("spring class") pending resolution of the grievance. (*Id.*). In March 1994, CVM instructed plaintiff to stop attending the class or face arrest. (*Id.*). She attempted to drop the class without success, and NCSU changed the "I" (signifying "Incomplete") she had initially received for the spring class to an "F." (*Id.* ¶¶ 17, 18). Plaintiff ultimately lost her grievance. (*Id.* ¶ 1). NCSU's actions against plaintiff were based on sexual and political bias against her. (*Id.* ¶ 2).

Almost 20 years later, around May 2013, plaintiff applied for a faculty position at her undergraduate school. (*Id.* ¶ 3; Ex. B (D.E. 3-2) 3). The interviewing department chair requested a copy of her transcript from NCSU. (Compl. ¶ 3). NCSU did not honor the request on the grounds that plaintiff owed $321 for the spring class and sent her a bill for this charge. (*See* Compl., Ex. B 3-6). This was the first time plaintiff learned NCSU claimed she owed any payment for the spring class. (*See* Compl. ¶ 6). Plaintiff had had student loan funds designated to pay the charge, but CVM had rejected them in 1994. (*Id.* ¶ 14). In June 2013, NCSU told plaintiff that it would "'ruin her credit'" if she did not pay the $321 charge. (*Id.* ¶ 4).

NCSU eventually did provide a copy of plaintiff's transcript to her and the prospective employer. (*See id.* ¶¶ 3, 4). Plaintiff had not previously known of the change of her grade for the spring class. (*See id.* ¶ 3). Plaintiff's undergraduate school denied her the faculty position because of the delay in NCSU's provision of her transcript and credibility issues regarding her presented by NCSU's changes in her grades, although she was well qualified for the job. (*Id.* ¶

2

4). Her undergraduate school informed her that her lack of a Ph.D., which was denied her by NCSU, would forever prevent her from gaining fulltime, salaried employment or benefits on a faculty. (*Id.*).

Plaintiff appears to assert claims against NCSU for violation of the First Amendment and the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983; conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985 ("§ 1985"); breach of contract; defamation; and intentional infliction of emotional distress. She seeks from NCSU: $3.5 million in compensatory damages; $2.5 million in punitive damages; revision of her transcript to show her purportedly correct grades, her being in good standing at NCSU, and her receipt of a Ph.D.; issuance of the Ph.D.; forgiveness of all her student loans and other debt to NCSU; letters of apology (one on behalf of NCSU and the other CVM); and other relief. (Compl. ¶ 35).

## II. DISCUSSION

In support of its motion to dismiss, NCSU argues that the court lacks subject matter jurisdiction over it because it enjoys sovereign immunity under the Eleventh Amendment to the United States Constitution. It also argues that plaintiff's claims are time barred. Because the court finds that the issue of sovereign immunity is dispositive of this case, it will confine its analysis to that issue.

### A. Applicable Legal Principles

#### 1. Standard of Review

Dismissal on Eleventh Amendment grounds may be sought by a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or a motion to dismiss for failure to state

3

a claim upon which relief can be granted under Rule 12(b)(6). Here, NCSU asserts its motion pursuant to both provisions.

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). The plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint attacked by a motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While the court must take the facts in the light most favorable to the plaintiff, the court "need not accept the legal conclusions drawn from the facts [or] . . . . unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The standard used to evaluate the sufficiency of the pleading is flexible, and a *pro se* complaint, however inartfully pled, is held to less stringent standards than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).[2]

In considering a Rule 12(b)(6) motion, a court may consider documents attached to the complaint (such as an EEOC right-to-sue letter) so long as the documents are integral to the complaint and authentic. *See Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Moreover, the court need not accept as true allegations that are contradicted by exhibits to the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

---

[2] *Erickson*, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on the insufficiency of the allegations of the complaint, as here, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The plaintiff bears the burden of showing that federal jurisdiction exists. *Id.* at 1219.

The Fourth Circuit has not definitively ruled whether dismissal on Eleventh Amendment grounds should be based on Rule 12(b)(1) or Rule 12(b)(6). *Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000) (discussing the Fourth Circuit split in dismissing cases on Eleventh Amendment grounds under both Rule 12(b)(1) and Rule 12(b)(6)); *see also Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment . . . does not automatically destroy original jurisdiction."). Here, the court finds it appropriate to proceed under Rule 12(b)(1), where sovereign immunity under the Eleventh Amendment is not entangled in the merits of plaintiff's claims and is dispositive of the case. *See Hendy v. Bello*, 555 Fed. Appx. 224, 226-27 (4th Cir. 6 Feb. 2014) (upholding dismissal on grounds of Eleventh Amendment immunity pursuant to Rule 12(b)(1)) (citing *Vulcan Materials Co. v. Massiah*, 645 F.3d 249, 261 (4th Cir. 2011)); *cf. Plumer v. State of Md.*, 915 F.2d 927, 932 n.5 (4th Cir. 1990) (instructing that in a case where a defendant's objection to the court's jurisdiction is also a challenge to the existence of a federal cause of action the proper procedure is to find jurisdiction and address the objection as an attack on the merits of plaintiff's claims). The court's analysis and ultimate conclusion would not materially differ, however, even if it were proceeding under Rule 12(b)(6).

5

### 2. Sovereign Immunity under the Eleventh Amendment

The Eleventh Amendment limits the authority of the federal courts to hear claims against the states. In doing so, it recognizes that the doctrine of sovereign immunity limited the judicial authority granted in Article III of the United States Constitution. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). By its terms, the amendment addresses only suits against a state by citizens of another state or another country. The amendment reads: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. However, the Supreme Court has interpreted the sovereign immunity that the Eleventh Amendment recognizes to apply as well to suits against a state by its own citizens. *Pennhurst*, 465 U.S. at 98 (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890), *overruled on other grounds by statute*, 42 U.S.C. § 2000d-7). A state may waive its sovereign immunity against suit in federal court, but such waiver must be unequivocally expressed. *Id.*, 465 U.S. at 99. Similarly, while Congress may abrogate the Eleventh Amendment in legislation under the Fourteenth Amendment, an unequivocal expression of Congress's intent to do so is required. *See id*.

The doctrine of sovereign immunity under the Eleventh Amendment applies not only to a state itself, but also its institutions and other instrumentalities, which may include state universities. *See*, *e.g.*, *Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990); *Bin Xu v. Univ. of N.C. at Charlotte* ("UNCC"), Civ. No. 3:08-CV-403-DCK, 2009 WL 7216040, at *3 (W.D.N.C. 30 Sept. 2009), *mem. and recomm. adopted in relevant part by* 2010 WL 5067423 (6 Dec. 2010); *Brown v. Rector & Visitors of the Univ. of Va.*, No. 3:07CV30, 2008 WL 1943956, at *4 (W.D. Va. 2 May 2008). Further, the limitation effected

by the Eleventh Amendment applies to claims against a state and its instrumentalities regardless of the nature of the relief sought. *Pennhurst*, 465 U.S. at 100 (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)). The claims against state instrumentalities specifically held to be covered by sovereign immunity under the Eleventh Amendment include claims pursuant to § 1983 and § 1985, and claims for breach of contract, defamation, intentional infliction of emotional distress, and injunctive and declaratory relief.[3] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (§ 1983 claims); *Huang*, 902 F.2d at 1136-37, 1138-39 (upholding summary judgment dismissing monetary damages claims by professor for free speech and due process violations under § 1983 and § 1981; intentional infliction of mental distress; defamation; and intentional interference with contractual relations); *Liu v. Jackson*, No. 4:09-CV-415-A, 2010 WL 342251, at *4 (N.D. Tex. 29 Jan. 2010) (dismissing claims by graduate student against officials with University of North Texas and others for federal constitutional violations pursuant to § 1983, defamation, false arrest, breach of contract, and fraud); *Bin Xu,* 2009 WL 7216040, at *3 (dismissing claims by *pro se* Ph.D. student for Fourteenth Amendment equal protection and Fifth Amendment due process violations pursuant to § 1983, conspiracy to violate civil rights pursuant to § 1985, interference with civil rights under N.C. law, and violation of N.C. constitutional rights); *Brown*, 2008 WL 1943956, at *2 (dismissing claims by Ph.D. student for federal due process violations, breach of contract, declaratory judgment, injunctive relief, compensatory damages, and attorney's fees).

---

[3] Although *Ex Parte Young*, 209 U.S. 123 (1908) recognized an exception under the Eleventh Amendment for prospective injunctive relief, the Supreme Court has subsequently specified that it applies only to state officials and not a state or its instrumentalities. *See Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

7

B. Analysis

There is no question that NCSU is an instrumentality of the state of North Carolina. It was established by North Carolina as one of the institutions comprising the University of North Carolina ("UNC"). N.C. Gen. Stat. § 116-4.[4] Plaintiff has made no showing that NCSU has waived its Eleventh Amendment immunity from suit in federal court or that such immunity has been abrogated by Congress. *See Huang*, 902 F.2d at 1138-39 (rejecting contention that N.C. Gen. Stat. § 116-3 providing for the Board of Governors of UNC waived the Eleventh Amendment immunity of the Board, NCSU, and other defendants); *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 812-13 (M.D.N.C. 2005) (noting that N.C.'s waiver of sovereign immunity for negligence claims against it requires that such claims be brought in the Industrial Commission and rejecting contention that the purchase of insurance by N.C. Central University ("NCCU") or N.C. Gen. Stat. § 15A-297 relating to wiretapping waived NCCU's and other defendants' immunity); *Alston v. N.C. A & T State University* ("NC A & T"), 304 F. Supp. 2d 774, 783-84 (M.D.N.C. 2004) (rejecting contentions of waiver of the Eleventh Amendment immunity of NC A & T based on, *e.g.*, N.C.'s limited waiver with respect to negligence claims

---

[4] This statute reads:

§ 116-4. Constituent institutions of the University of North Carolina

The University of North Carolina shall be composed of the following institutions of higher education: the University of North Carolina at Chapel Hill, *North Carolina State University at Raleigh*, the University of North Carolina at Greensboro, the University of North Carolina at Charlotte, the University of North Carolina at Asheville, the University of North Carolina at Wilmington, Appalachian State University, East Carolina University, Elizabeth City State University, Fayetteville State University, North Carolina Agricultural and Technical State University, North Carolina Central University, North Carolina School of the Arts, redesignated effective August 1, 2008, as the "University of North Carolina School of the Arts," Pembroke State University, redesignated effective July 1, 1996, as the "University of North Carolina at Pembroke", Western Carolina University and Winston-Salem State University, and the constituent high school, the North Carolina School of Science and Mathematics.

N.C. Gen. Stat. § 116-4 (emphasis added).

8

and NC A & T's purchase of insurance); *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 498 (M.D.N.C. 2002) (holding that Congress had not overridden Eleventh Amendment immunity in suit against UNC at Chapel Hill and other defendants except under Title VII, which is not relevant here). NCSU is therefore protected by Eleventh Amendment immunity. *See*, *e.g.*, *Huang*, 902 F.2d at 1138-39 (NCSU protected); *Bin Xu*, 2009 WL 7216040, at *3 (UNCC protected); *Hooper*, 379 F. Supp. 2d at 811-13 (NCCU protected); *Alston*, 304 F. Supp. 2d at 782-84 (NC A & T protected); *Jennings*, 240 F. Supp. 2d at 498 (UNC at Chapel Hill protected). Under the authorities cited, protection extends to all of the claims apparently asserted by plaintiff. This court accordingly lacks subject matter jurisdiction over this case, and it should be dismissed pursuant to Rule 12(b)(1).

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY RECOMMENDED that NCSU's motion to dismiss (D.E. 15) be ALLOWED and that this action be DISMISSED.

IT IS ORDERED that the Clerk shall send copies of this Memorandum and Recommendation to plaintiff, who shall have until 6 February 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 23rd day of January 2015.

_____
James E. Gates
United States Magistrate Judge