IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-850-FL

| | |
|---|---|
| KENDA R. KIRBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| NORTH CAROLINA STATE ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant North Carolina State University's ("NCSU") motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (DE 15). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge James E. Gates entered a memorandum and recommendation ("M&R") wherein it is recommended that defendant's motion be granted. Plaintiff has filed objections to the M&R, and the deadline for defendant's response has passed. In this posture, the issues raised are ripe for ruling. For the reasons stated below, the court adopts the recommendation in the M&R and grants NCSU's motion to dismiss.

**BACKGROUND**

Plaintiff commenced this action on December 13, 2013, by filing a motion for leave to proceed *in forma pauperis*, attaching a copy of her proposed complaint. The motion was denied by order dated December 16, 2013, and plaintiff paid her filing fee and filed her complaint January 13, 2014. NCSU filed its motion to dismiss on April 8, 2014, arguing that the court lacked jurisdiction

over it because it was an instrumentality of North Carolina protected by the Eleventh Amendment of the United States Constitution, and that the action was barred by the statute of limitations.

The M&R issued January 23, 2015. The M&R construed plaintiff's complaint as raising claims for violation of the First Amendment and equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983; conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985; breach of contract; defamation; and intentional infliction of emotional distress. The M&R recommends dismissal of plaintiff's claims because defendant is entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution.

Where there is no objection to the M&R's summary of the allegations in plaintiff's complaint, the court hereby incorporates that portion of the M&R by reference. As pertinent here, plaintiff was admitted to a Ph.D. program at the College of Veterinary Medicine at NCSU in 1992. (Compl. ¶ 8). In April 1993, she attended an event for lesbians and gays in Washington, D.C. (Id., ¶ 9). She took her final exams the following week, earning enough points to maintain a passing grade and good standing. (Id.). However, plaintiff later received grade reports showing failing grades. (Id., ¶ 10). One of plaintiff's professors, Dr. Ida Washington Smoak, informed plaintiff that Smoak and another professor, Dr. James E. Smallwood, had intentionally changed plaintiff's grades. (Id., ¶ 11). Smoak told plaintiff the professors were angry because plaintiff "attended a gay rights rally at an inconvenient time" and because plaintiff "was an avid Clinton supporter." (Id.). Plaintiff alleges that, "in some conservative circles in North Carolina during this time frame, being an 'avid Clinton support' [sic] was considered code for being gay." (Id., ¶ 11 n. 2).

Plaintiff filed a grievance, pursuant to NCSU internal procedures, and continued to attend a class in the spring 1994 semester, pending resolution of the grievance. (Id., ¶¶ 12, 16). However,

2

she received a letter from an unspecified source who threatened her with arrest if she continued attending the class. (Id., ¶ 16). She was then prevented from dropping the class, and a grade of "I" (incomplete) filed by course professors was changed to "F" (failing). (Id., ¶ 17).

In summer of 2013, plaintiff interviewed for a faculty position at her undergraduate alma mater. (Id., ¶ 3). The interviewing department chair requested a copy of plaintiff's NCSU transcript, but NCSU refused the request because it claimed plaintiff owed $321 for the spring 1994 class. (Id., ¶ 3 and Ex. B 3-6). Although plaintiff was considered well-qualified for the position with her alma mater, plaintiff ultimately was denied employment due to delay in the transcript's delivery, and also because of credibility issues raised by the failing grades on her transcripts. (Id., ¶ 4).

## DISCUSSION

A.  Standard of Review

    a.  Review of M&R

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

1.  Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where, as here, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based," then "all facts alleged in the complaint are assumed true." Adams, 697 F.2d at 1219. "Where the jurisdictional facts are intertwined with the facts central to the merits of the dispute . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits," and Rule 12(b)(1) is "an inappropriate basis" to grant dismissal. Adams, 697 F.2d at 1219-20.

2.  Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

In evaluating the complaint, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements

4

of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir.1994). Nevertheless, Erickson does not undermine the requirement that a pleading contain "more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555).[1]

B.  Analysis

Plaintiff objects that her claim is brought pursuant to Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681 *et seq.*) ("Title IX"), and asserts that NCSU has waived its Eleventh Amendment immunity for purposes of this suit.

The Fourth Circuit has not definitively ruled on whether dismissal on Eleventh Amendment grounds is properly based on Rule 12(b)(1) or 12(b)(6). See Andrews v. Daw, 201 F.3d 521, 525 n. 2 (4th Cir. 2000). Because the issues raised by application of the Eleventh Amendment in this case do not implicate the merits, the M&R proceeded under Rule 12(b)(1). Plaintiff does not specifically object to this part of the analysis, and the court finds no clear error.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[1] The M&R did not analyze defendant's motion under Rule 12(b)(2), and the court does not find that rule relevant to the instant discussion.

5

United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const., Amend. XI. Although the text expressly provides states with immunity from suits brought by "citizens of another state, or by citizens or subjects of any foreign state" only, the immunity has been extended to suits brought by a state's own citizens. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997). The states' immunity also extends to "state agents and state instrumentalities." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 248 (4th Cir. 2012). NCSU is one such "instrumentality." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990).

There are three exceptions to the Eleventh Amendment's bar against suits. Lee-Thomas, 666 F.3d at 248-49. The first applies when an individual sues "for prospective injunctive relief against state officials acting in violation of federal law." Id. (quoting Frew *ex rel.* Frew v. Hawkins, 540 U.S. 431, 437 (2004). That exception does not apply to any of the claims here, because the complaint does not name as defendants any state official. See Lee-Thomas, 666 F.3d at 249.

Second, Congress may abrogate Eleventh Amendment immunity without state consent by both "unequivocally intend[ing] to do so and act[ing] pursuant to a valid grant of constitutional authority." Id. (quoting Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001)); Litman v. George Mason Univ., 186 F.3d 544, 549 (4th Cir. 1999). In doing so, Congress acts under the authority of section 5 of the Fourteenth Amendment. Litman, 186 F.3d at 550. Third, a state may waive its immunity in federal court. Lee-Thomas, 666 F.3d at 249. As is pertinent here, one way that a state may waive such immunity is when it "voluntarily participat[es] in federal spending programs when Congress expresses a clear intent to condition participation in the programs on a

6

State's consent to waive its constitutional immunity." Litman, 186 F.3d at 550 (brackets and internal quotation marks omitted).

Neither of these exceptions apply to plaintiff's section 1983 or section 1985 claims, nor to plaintiff's claims under North Carolina common law. See Quern v. Jordan, 440 U.S. 332, 342-45 (1979) (holding section 1983 did not abrogate state sovereign immunity); Clark v. Md. Dep't of Pub. Safety and Correctional Servs., 247 F. Supp. 2d 773, 776, n. 2 (D. Md. 2003) (holding section 1985 did not abrogate state sovereign immunity). Accordingly, the M&R properly recommended dismissal of all these claims pursuant to the Eleventh Amendment.

By contrast, the third exception, for state waiver, applies to actions brought under Title IX against recipients of federal funding under that statute. Title IX, in conjunction with 42 U.S.C. § 2000d-7(a)(1), represents Congress' expression of a "clear, unambiguous, and unequivocal condition of waiver of Eleventh Amendment immunity." Litman, 186 F.3d at 554. Thus, by accepting federal funding under Title IX, a state agrees to waive its Eleventh Amendment immunity. Id.[2] Although the complaint does not expressly allege that NCSU has accepted such funding, the court assumes that this condition has been met for purposes of the instant motion to dismiss.

However, plaintiff's Title IX claim suffers from a different malady – failure to allege sufficient facts to state a plausible claim for relief, under Rule 12(b)(6). Iqbal, 556 U.S. at 678. Title IX provides that "[n]o person ... shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). Cases interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), offer

---

[2] In Litman, the Fourth Circuit declined to address whether the second exception, for unilateral Congressional abrogation, applied to Title IX actions. Litman, 186 F.3d at 557. As was the case in Litman, it is not necessary to address that issue here.

7

guidance in evaluating a claim brought under Title IX. Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007). In one such Title VII case, Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998), the court noted that the "critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Likewise, in Jennings, the Fourth Circuit stated that a necessary elements to a Title IX claim for sexual harassment was that the plaintiff "was subjected to harassment *based on her sex*." Jennings, 482 F.3d at 695 (emphasis added).

The factual allegations that relate to the motive of the alleged discrimination are found in the professors' statements that they changed plaintiff's grades because she "attended a gay rights rally at an inconvenient time" and was an "avid Clinton supporter" (allegedly a "code" word for "being gay"). (Compl., ¶ 11 n. 2). Nothing in the complaint suggests that a male individual would have been treated any differently for attending the gay and lesbian event, or for being homosexual or being perceived as homosexual.[3]

Plaintiff's allegations come closer to the type of sexual discrimination described in Price Waterhouse v. Hopkins, where the Supreme Court recognized that "sex stereotyping" could constitute a ground of sex discrimination in violation of Title VII. Price Waterhouse v. Hopkins, 490 U.S. 228, 250-52 (1989). The evidence supporting sex stereotyping in that case included comments that the plaintiff was "macho," "overcompensated for being a woman," needed to take "a course at charm school," and could improve her chances for partnership if she would "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Id. at 235. The court found that these comments could constitute "sex

---

[3] Plaintiff's actual sexual orientation is not clear from the complaint.

8

Case 5:13-cv-00850-FL   Document 21   Filed 03/10/15   Page 8 of 10

stereotyping." Id., at 250-51. The Eighth Circuit has recognized that a claim under Title IX, as well as Title VII, may lie when harassment is motivated by the plaintiff's "failure to conform with gender stereotypes." Wolfe v. Fayetteville, Ark. Sch. Dist., 648 F.3d 860, 867 (8th Cir. 2011). For its part, the Fourth Circuit recently declined an opportunity to expressly rule on whether a "failure to conform to gender stereotypes" could constitute a Title IX violation. M.D. v. Sch. Bd. of Richmond, 560 F. App'x 199, 202 (4th Cir. 2014).

Assuming *arguendo* that the Fourth Circuit would recognize such a claim in a Title IX context, plaintiff again fails to allege sufficient facts in support. There are no allegations of circumstances akin to those in Price Waterhouse, showing that plaintiff's professors believed she was not behaving in an appropriately feminine manner. The facts alleged fail to support that any gender-based discrimination existed in this case.

While the complaint might allege discrimination on the basis of political viewpoint, such is not the subject of Title IX. Similarly, Title IX does not protect against discrimination based on actual or perceived sexual orientation. See Mayes v. Bd. of Educ. of Prince George's Cnty., No. 8:13-CV-3086, at 1 (D. Md. Nov. 26, 2013) (unavailable on legal search engine); M.D. v. Sch. Bd. of Richmond, No. 3:13-CV-329, 2013 WL 2404842, at *3 (E.D. Va. May 31, 2013) (vacated on other grounds, M.D., 560 F. App'x at 203; Tyrrell v. Seaford Union Free Sch. Dist., 792 F. Supp. 2d 601, 622-23 (E.D.N.Y. 2011); see also Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001) (holding that Title VII of the Civil Rights Act of 1964 does not prohibit discrimination based on sexual orientation); Spearman v. Ford Motor Co., 231 F.3d 1080, 1084 (7th Cir. 2000) (same).

9

Plaintiff's invitation to overturn the Eleventh Amendment is declined, such power being beyond this court's authority. Davis v. Balkom, 369 U.S. 811, 811 (1962) ("Both state and federal courts have an equally binding obligation to uphold the Constitution.").

**CONCLUSION**

Based on the foregoing, upon *de novo* review of the portions of the M&R to which specific objections were raised, and upon considered review of the remainder, the court ADOPTS the M&R in full. Defendants' motion to dismiss (DE 15) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED this the 10th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge